IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| AMI SINAY and | * | Chapter 7 |
| BATEL SINAY, | * | |
|     Debtors | * | |
| | * | Case No.: 1-05-bk-04990 |
| STEVEN CARR, Chapter 7 Trustee | * | |
|     Objectant | * | |
| | * | |
| v. | * | |
| | * | |
| AMI SINAY and | * | |
| BATEL SINAY, | * | |
|     Respondent | * | |

## OPINION

### Procedural History

Before the Court is the objection filed by the Chapter 7 Trustee (the "Trustee") to certain exemptions claimed by Ami and Batel Sinay ("Debtors"). Specifically, Debtors seek to exempt three Individual Retirement Accounts ("IRAs"), two held by Ami Sinay ("Mr. Sinay") and one by Batel Sinay ("Mrs. Sinay").[1] The Trustee asserts that the IRAs may not be claimed as exempt because they are not in "payout status," and they are not reasonably necessary for the support of the Debtors. On October 24, 2005, the Court took testimony regarding the Trustee's objection. The matter is ready for decision.[2]

---

[1] According to Schedule "C," the IRAs' respective values were $25,145.46, $13,142.64 and $10,671.82 on the date of the petition. Schedule "B" states that Mrs. Sinay's account has $10,671.82 while the other two accounts are owned by Mr. Sinay.

[2] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is core pursuant to 28 U.S.C. § 157(b)(2)(A),(I) and (O). This Opinion constitutes the findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052.

## Factual Findings

Debtors were both 37 years of age when they filed their bankruptcy petition. They reside in a home valued at $300,000.00 on Schedule "A." The date that they purchased their home is not of record, but Schedule "D" states that the first mortgage was executed in December 2004 and had a balance due of $281,614.50 on the date the petition was filed. Debtors reside in the home with their three minor children. In the three years prior to their bankruptcy filing, Mr. Sinay was self-employed as a hoof trimmer while Mrs. Sinay was employed as a bookkeeper for the business. On the date of the petition, their combined monthly net income was $5,272.52 and their monthly household expenditures were $5,421.73, which included a mortgage payment of $2,112.81. Mr. Sinay testified that he has experienced chronic back pain and, at some point after the bankruptcy petition was filed, was diagnosed with a medical condition involving protruding discs in his lumbar spine.[3] He also testified that he has carpel tunnel syndrome and needs to have surgery on his hands.

## Discussion

A debtor's ability to claim certain property as exempt facilitates the "fresh start" envisioned in the Bankruptcy Code. *See* 11 U.S.C. § 522(b) (allowing debtor to elect to take exemptions provided by state or federal law). A creditor or the bankruptcy trustee may object to a debtor's exemption claim, but if no objections are filed, then "the property claimed as exempt

---

[3] Mr. Sinay introduced a letter dated October 21, 2005 from his treating physician, Rocco R Arcieri, II, M.D., to his attorney. In the letter, the physician recommended that Mr. Sinay limit his physical activity and speculated that his occupation as a hoof trimmer could aggravate or worsen Mr. Sinay's back problem. Since Mr. Sinay's physician did not testify, the letter to Debtors' counsel lacks authentication and must be disregarded as hearsay. Debtors also attached to their brief a letter from Joel W. Winer, M.D. to Dr. Arcieri that clearly lacks a foundation, constitutes hearsay and may not be considered by the Court.

2

. . . is exempt." 11 U.S.C. § 522(l); Fed. R. Bankr. P. 4003(b). The trustee bears the burden of proof in any objection to a debtor's claim of exemptions under Section 522. Fed. R. Bankr. P. 4003(c); *Kaplan v. First Options of Chicago, Inc.,* 189 B.R. 882 (E.D. Pa. 1995).

The Trustee objects to Debtors' attempt to exempt three IRAs under Section 522(d)(10)(E). In *Rousey v. Jacoway*, 544 U.S. 320, 125 S. Ct. 1561 (2005), the U.S. Supreme Court held that an IRA may be exempted under Section 522(d)(10)(E) because it confers a right to receive payment on account of age and is similar to plans or contracts specifically enumerated in the exemption provision. Once it is determined that a plan qualifies under Section 522(d)(10)(E), then the Court must determine whether the IRA is reasonably necessary for the support of the debtor or his dependents. The parties agree that, in accordance with my decision in *In re Junious and Lula Mae Wiggins*, 1-02-bk-05942 (November 1, 2005), the instant case is to be decided by applying the factors set forth in *In re Flygstad*, 56 B.R. 884, 889-90 (Bankr. N.D. Iowa 1986).[4]

> In considering whether a debtor's right to payment in a profit sharing or pension plan is reasonably necessary for support, the Court will look to many factors,

---

[4]In *In re Clark*, 711 F.2d 21 (3d Cir. 1983), the Third Circuit held that a pension can not qualify as "reasonably necessary for support" under Section 522(d)(10)(E) unless the debtor is receiving payments when the petition is filed. In *Wiggins,* I stated that the Supreme Court in *Rousey* disregarded the distinction between a present right to receive a stream of payments and an interest in the corpus of an account, thus impliedly overruling *Clark*. The Supreme Court determined in *Rousey* that IRAs are sufficiently similar to other retirement plans enumerated in 522(d)(10)(E) and are maintained on account of age. Although the Court did not address whether the accounts were reasonably necessary for the debtors' support, it concluded that the Rouseys could exempt their IRAs, aware that the debtors were not in pay out status when they filed their petition. Recently, the District Court for the Western District of Pennsylvania has rejected this interpretation of *Rousey* holding that *Clark* remains good law. *Skiba v. Auman*, 2006 WL 278153 (W.D. Pa. February 3, 2006). Since I find that Debtors have failed to demonstrate that the IRAs are reasonably necessary for their support, I need not revisit the issue of whether the corpus of an account not in payout status can be exempted under of Section 522(d)(10)(E).

Case 1:05-bk-04990-MDF    Doc 28    Filed 04/13/06    Entered 04/13/06 14:43:43    Desc
Main Document      Page 3 of 7

> among them the following:
> (1) Debtor's present and anticipated living expenses; (2) Debtor's present and anticipated income from all sources; (3) Age of the debtor and dependents; (4) Health of the debtor and dependents; (5) Debtor's ability to work and earn a living; (6) Debtor's job skills, training, and education; (7) Debtor's other assets, including exempt assets; (8) Liquidity of other assets; (9) Debtor's ability to save for retirement; (10) Special needs of the debtor and dependents; (11) Debtor's financial obligations, e.g., alimony or support payments.

*Id*. at 889 -890.

Applying these factors to the present case, I find that the Trustee has established that the IRAs are not reasonably necessary for the support of the Debtors and their dependents.

    *a.*     *Present and anticipated living expenses and ability to save for retirement.*

Except for their mortgage payment, Debtors' living expenses are within reasonable limits in all categories. At $2,112.81 per month, however, Debtors' mortgage payment consumes 40% of their net monthly income – clearly a significant and, arguably, an excessive expenditure. It is not unreasonable to expect debtors to reduce expenses either in preparation for or in response to a loss of income. With a reduction in housing expenses of only $500.00 per month, Debtors' current monthly income would be sufficient to maintain their family while allowing them to save a modest amount each month for retirement. Debtors' current budget, even without a reduction in the mortgage expense, anticipates that they will continue to set aside $195.00 each month for retirement.

    *b.*     *Present and anticipated income from all sources and job skills, training, and education.*

Debtors' argument in favor of finding the IRAs to be necessary for their support relies heavily on Mr. Sinay's anticipated loss of income due to his chronic health problems. Notwithstanding the physical demands on his body, Mr. Sinay apparently continues to work in

the hoof trimming business. Accordingly, no evidence was introduced that Debtors' income has been reduced and any projected loss in income would be pure speculation. While Debtors argue that their potential earnings are limited by their lack of education, both Debtors appeared to be bright and articulate and able to obtain further education. Mrs. Sinay has no health problems that would prevent her from seeking a full-time position. Further, she stated that she has a bookkeeping diploma and experience working as a bookkeeper in a firm other than her husband's business.

   c.  *Age of Debtors and their dependents.*

Debtors are both 37 years of age and far from retirement. Both can anticipate working approximately thirty more years during which time they will be able to accumulate additional retirement savings. Admittedly, Debtors have young children at home, which may limit the ability of both parents to work full-time or which may require Debtors to incur additional expenses for child care. However, the limitations imposed by the ages of their children are not extraordinary.

   d.  *Health of Debtors and their dependents and ability to work and earn a living.*

Mr. Sinay testified that his physician has recommended that he "slow down" due to various physical ailments including back pain, a possible tumor and carpel tunnel syndrome. The physician's letter submitted by Debtors was not authenticated and the physician was not available for cross examination by the Trustee. Although Mr. Sinay has several significant health issues, there was no testimony regarding his prognosis or whether surgery or other medical treatment might alleviate his pain and allow him to continue to work in his hoof trimming business. Mrs. Sinay testified that she has no health problems that would prevent her from

5

obtaining employment to support the family even if Mr. Sinay is compelled by his condition to find less physically demanding employment.[5]

  e. *Other assets, including exempt assets.*

Debtors own a residence that they value at $300,000.00. Their personal property is valued at $155,353.27 and includes equipment Mr. Sinay uses in his hoof trimming business. Again, it is not unreasonable to expect Debtors to obtain more affordable housing in response to their loss of income. Providing Debtors with a "fresh start" does not imply that Debtors should be permitted to expend excessive amounts to maintain their residence and to shield valuable assets from their creditors while discharging significant unsecured debt.

  f. *Special needs and financial obligations*

No evidence was presented that Debtors or their dependents have any special needs. Neither Debtor has obligations related to a previous marriage.

## Conclusion

No single factor or combination of factors discussed above supports the conclusion that Debtors' IRAs are reasonably necessary for their support and maintenance. Therefore, the objection to Debtors' claim of exemptions in these IRAs will be sustained. It would be unfair, however, for Debtors to be responsible for the payment of the tax penalty that will be incurred when the Trustee liquidates the IRAs. Therefore, the Trustee shall reserve an appropriate

---

[5]It is somewhat noteworthy that while Debtors seek to discharge a substantial sum of unsecured debt – $95,008.64 according to Schedule "F" – no physicians, hospitals or other medical treatment facilities are listed as creditors. Debtors are self-employed, but their schedule of expenses shows no expenditure for medical insurance. Thus, it would appear that prior to filing their petition, Mr. Sinay did not seek medical attention to correct his condition. Of course, he may have paid for his medical services with his credit cards, but there is no evidence in the record regarding this issue.

amount prior to distribution of the proceeds to insure that all tax penalties incurred by Debtors will be satisfied out of the funds in the IRAs. An appropriate order will be entered.

BY THE COURT,

Mary D. France
Bankruptcy Judge

Date: April 12, 2006

*This document is electronically signed and filed on the same date.*

7

Case 1:05-bk-04990-MDF    Doc 28    Filed 04/13/06    Entered 04/13/06 14:43:43    Desc
Main Document    Page 7 of 7